IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MTU AMERICA INC.,                           )
                                            )
          Plaintiff,                        )
                                            )
     v.                                     )        1:14-cv-773 (LMB/TCB)
                                            )
SWIFTSHIPS SHIPBUILDERS LLC, and            )
     ICS NETT, INC.,                        )
                                            )
          Defendants.                       )

MEMORANDUM OPINION

Before the Court are plaintiff MTU America Inc.'s Petition for Attorney's Fees and

Costs [Dkt. Nos. 70, 71] and MTU America Inc.'s Supplement to Its Petition for Attorney's

Fees and Costs [Dkt. Nos. 74, 75], which together seek a total of $406,473.13 in attorney's

fees and costs.  For the reasons that follow, plaintiff's motions will be granted.

I.        BACKGROUND

A.        **Facts and Contract Terms**

This action arose from two contracts that plaintiff MTU America Inc. ("MTU")

entered into with defendants ICS Nett, Inc. ("ICS Nett") and Swiftships Shipbuilders, LLC

("Swiftships") to supply marine engines, parts, and services to Swiftships.  MTU is a

Michigan corporation with its principal place of business in Michigan.  ICS Nett is a Virginia

corporation with its principal place of business in Virginia.  Swiftships is a Louisiana limited

liability company with its principal place of business in Louisiana, wholly owned by Swift

Group, LLC,  a Louisiana limited liability company with its only two members being ICS

Marine, Inc. and Calvin J. Leleux.

In September 2009, MTU and Swiftships entered into a contract under which MTU agreed to provide Swiftships with parts and services needed to fabricate nine patrol boats for the United States Navy.  Swiftships and MTU agreed that MTU would provide these parts and services according to a delivery schedule and would invoice Swiftships for each delivery. The contract's Terms and Conditions provided that Swiftships would be subject to a finance charge of 8% per month for balances not paid within 30 days of receipt of an invoice and that Swiftships would be responsible for any and all fees incurred by MTU in collecting payment of any invoice.  Swiftships failed to pay $1,582,992.07 of the amount it owed to MTU.  With accrued interest, the total amount owed came to $2,097,245.02.

In June 2010, MTU entered into a contract with ICS Nett in which MTU agreed to provide Swiftships with additional parts and services.  ICS Nett and MTU agreed that MTU would provide these parts and services to Swiftships according to a delivery schedule and would invoice ICS Nett for each delivery.  The same terms and conditions that had applied to the 2009 contract applied to this contract with ICS Nett agreeing that it would be subject to an 8% finance charge per month for balances not paid within 30 days of receipt of an invoice and that ICS Nett would be responsible for any and all fees incurred by MTU in collecting payment of any invoice.  Again, problems arose over payment.  After attempting to collect payment on ICS Nett's unpaid invoices, MTU advised ICS Nett that it would stop shipping engines and parts under their contract.

In May 2012, the United States Navy made a $2,000,000 payment to Swiftships that was immediately transferred to MTU and applied against a portion of the balance owed by ICS Nett (allegedly at ICS Nett's insistence).  ICS Nett remained expressly liable for the remaining balance it owed MTU.  After receiving the $2,000,000 payment, MTU completed

2

its deliveries to Swiftships; however, ICS Nett failed to pay $2,270,566.09 of the amount it owed to MTU under the invoices, totaling $3,778,879.39 with interest.  With respect to collection expenses, the Terms and Conditions for each contract stated either that "The customer will be charged with taxes and other expenses as incurred" or "Any collection fees . . . shall be borne by the purchaser."

**B.      Summary of Proceedings**

MTU initiated this action on June 23, 2014, to recover the unpaid amount owed by ICS Nett and Swiftships.  The Complaint contained nine counts, alleging claims against defendant Swiftships for breach of contract (Count I), account stated under Michigan law (Count II), promissory estoppel (Count III), and unjust enrichment (Count IV), and alleging claims against defendant ICS Nett for breach of contract (Count V), account stated under Michigan law (Count VI), promissory estoppel (Count VII), alter ego (Count VIII), and unjust enrichment (Count IX).

The parties engaged in motions practice and discovery and defendants filed a motion to dismiss all nine counts, which was granted in part and denied in part.  After defendants submitted their pretrial disclosures (one day late) indicating that they did not intend to file any exhibits or call any witnesses, the Court ordered them to show cause as to why judgment should not be entered in plaintiff's favor.  On January 23, 2015, the Court heard oral argument on its Show Cause Order, on MTU's Motion for Rule 37(b) Sanctions for defendants' failure to comply with an order compelling discovery, and on defendants' motion to amend their pretrial disclosures.  Following the hearing, the Court granted plaintiff's Motion for Rule 37(b) Sanctions, barred defendants from presenting witnesses or exhibits at trial, and ordered MTU to complete the remaining four depositions of defendants' principals and

representatives.  The Court also ordered that judgment be entered against ICS Nett for $3,778,879.39, plus attorney's fees and costs, for breach of contract (Count V) and against Swiftships for $2,097,245.02, plus attorney's fees and costs, for breach of contract (Count I). In addition, the Court ordered MTU to file a fee petition and bill of costs within 11 days following entry of final judgment on its remaining counts.  MTU subsequently deposed two principals of Swiftships and ICS Nett, after which defendants informed MTU that they no longer wished to defend against MTU's remaining claims.

On February 4, 2015, defendants made a formal offer of judgment under Fed. R. Civ. P. 68 as to MTU's remaining claims of unjust enrichment (Counts IV and IX) and alter ego (Count VIII).  In that offer of judgment, defendants acknowledged that they understood their "offer of judgment renders them jointly and severally liable for the amounts listed on the January 23 Order ($2,097,245.02 against Swiftships and $3,3778,879.39 against ICS Nett), and that the [C]ourt may enter a judgment for those amounts and for attorney's fees and costs in an amount to be determined on all counts." [Dkt. No. 60.]  The Clerk entered judgment on February 12, 2015; however, the parties moved to amend the judgment.  Accordingly, the Court ordered that the judgment be amended in accordance with the parties' wishes and the Clerk entered the following amended Rule 68 judgment on February 19, 2015:

> PURSUANT to Rule 68 of the Federal Rules of Civil Procedure, Judgment is hereby entered in favor of Plaintiff MTU America Inc. ("MTU") against Defendants Swiftships Shipbuilders LLC, in the amount of $2,097,245.02, and ICS Nett, Inc., in the amount of $3,778,879.39.  MTU is further entitled to attorney's fees and costs in an amount to be determined.  Defendants are jointly and severally liable for these amounts, including MTU's attorney's fees and costs.

[Dkt. No. 69.]  Under this judgment, defendants are jointly and severally liable for a total of $5,876,124.41, plus plaintiff's attorney's fees and costs.

MTU has submitted its Petition for Attorney's Fees and Costs, to which it has attached detailed time and expense reports, a Bill of Costs, and an affidavit. The initial Petition seeks a total of $373,227.46, which represents MTU's fees and costs up to January 31, 2015. MTU submitted a Supplement to Its Petition for Attorney's Fees and Costs, increasing the total amount sought to $409,102.13 to include the amount of fees and costs incurred in February 2015. Defendants filed an opposition, to which plaintiff has replied. In the reply, plaintiff concedes that the fee petition should be reduced by $2,629, bringing the total amount of attorneys' fees and costs sought to $406,473.13. This total represents less than 7% of the judgment to which defendants have stipulated.

## II.   DISCUSSION

### A. <u>Standard of Review</u>

In determining the amount of attorneys' fees to impose, a court must first calculate the "lodestar figure" by multiplying the reasonable hourly rate by the number of hours reasonably expended, and then consider the twelve factors set forth in <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216 (4th Cir. 1978); <u>see also</u> <u>Grissom v. The Mills Corp.</u>, 549 F.3d 313, 320-21 (4th Cir. 2008). Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

<u>Kimbrell's</u>, 577 F.2d at 226 n.28. A court need not address all twelve <u>Kimbrell's</u> factors independently "because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." <u>Freeman v. Potter</u>, No.

7:04-cv-276, 2006 WL 2631722, at *2 (W.D. Va. Sept. 13, 2006) (citing Hensley v.

Eckerhart, 461 U.S. 424, 434 n.9 (1983)), Report and Recommendation adopted, No. 7:04-cv-

276 (W.D. Va. Oct. 4, 2006).  Instead, a court need only discuss in detail "those factors that

are relevant to its determination of the reasonable amount of attorneys' fees to award in each

particular case."  Kennedy v. A Touch of Patience Shared Housing Inc., 779 F. Supp. 2d 516,

526 (E.D. Va. 2011).

      A prevailing party may recover costs, other than attorney's fees, under Fed. R. Civ. P.

54(d)(1); however, absent contractual authorization, a court may tax only those costs

authorized by statute.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42

(1987), superseded on other grounds, 42 U.S.C. § 1988(c) (1991).  Pursuant to 28 U.S.C.

§ 1920, the general taxation of costs statute, a court may tax:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  A court may deny costs due to "their excessiveness in a particular case."

Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999).

    **B.**    **MTU's Fees and Expenses**

      MTU utilized attorneys from two law firms in this litigation.  A Michigan firm,

Honigman Miller Schwartz and Cohn LLP ("Honigman"), was plaintiff's lead counsel and, in

compliance with Local Rule 83.1(D), plaintiff engaged counsel from the Clare Locke LLP

firm as local counsel.  The hourly rates for personnel from these firms are reflected as:

| Timekeeper | Firm | Title | Years' Experience | FY 2014 Standard Rate | FY 2015 Standard Rate | Hourly Rate Charged to MTU |
|---|---|---|---|---|---|---|
| Jeffrey Lamb | Honigman | Partner | 8 | $355 | $395 | Standard Rate |
| Robert Riley | Honigman | Associate | 6 | $295 | $320 | Standard Rate |
| Jeremy Lockhart | Honigman | Associate | 3 | $275 | $310 | Standard Rate |
| Derek Kelley | Honigman | Associate | 1 | $240 | $270 | Standard Rate |
| Martin Curran | Honigman | Associate | 1 | $220 | $260 | Standard Rate |
| Janice Underwood | Honigman | Paralegal | 47 | $235 | $235 | Standard Rate |
| Thomas Clare | Clare Locke | Partner | 19 | $710 | $710 | $500 |
| Elizabeth Locke | Clare Locke | Partner | 9 | $610 | $610 | $400 |
| Andy Phillips | Clare Locke | Senior Associate | 6 | $535 | $535 | $340 |
| Vanessa Higareda | Clare Locke | Legal Assistant | 20+ | $260 | $260 | $165 |
| Colleen Maguire | Clare Locke | Legal Assistant | 1 | $175 | $175 | $175 |

Pl.'s Mem. Supp. Pet. 6 [Dkt. No. 72].  Defendants did not challenge any of these hourly rates

in their opposition brief, and the Court finds that given the level of experience of the

attorneys, the hourly rates charged are reasonable.

Defendants do contest the number of hours plaintiff's counsel spent on this civil

action, arguing that this was a common place breach of contract lawsuit that plaintiff over-

litigated.  A review of the issues defendants raised in their motion to dismiss demonstrates

why plaintiff had to expend so many resources in litigating this lawsuit.  For example,

defendants argued that ICS Nett was an improper party, that the breach of contract claims

were barred by the applicable German statute of limitations, and that the unjust enrichment

claims did not satisfy the elements required by German law and were untimely under Virginia

law.  Defendants also argue that plaintiff should not get its attorney's fees for counts that were

dismissed.  Lastly, citing to one case, Textron Fin. Corp. v. AIC, Inc., No. 1:09-cv-1202 (E.D.

Va. July 23, 2010), defendants argue that the amount of fees is "completely out of line with

the level of fees awarded in similar cases."

Plaintiff's arguments fully defeat defendant's objections.  Of most significance to this

decision is the simple fact that defendants had no meritorious basis to refuse timely paying

plaintiff's invoices.  Unlike many breach of contract cases in which defects in plaintiff's

performance justify some reduction in the damages sought, in this case defendants agreed to

the full amount of damages.  Had they initially done so when the Complaint was first filed,

they could have avoided being liable for the fees and costs at issue.  Given defendants'

litigation strategy, they forced plaintiff to incur significant attorney's fees and expenses.

The only expenses to which defendants object are the travel expenses of out-of-state

counsel because local counsel was available.  Defendants are contractually obligated to pay

all expenses incurred by MTU in attempting to collect what was due under the contracts, and

defendants have not disputed the validity of the collection provisions in the contracts.

Significantly, plaintiff points out that had it exclusively used local counsel, its attorney's

fees—for which defendants are now liable—would have been substantially higher than the

amount of out-of-state counsel's travel expenses because of the considerably higher range of

accepted hourly rates for Northern Virginia counsel compared with Honigman's hourly rates.

Finding that the fees and expenses in this case were not excessive and that no

Kimbrell's factor supports any reduction, plaintiff's petition will be granted.

III.   CONCLUSION

For these reasons the Court finds that plaintiff's fees and costs were not unreasonable and that no <u>Kimbrell's</u> factor warrants any reduction.  Therefore, an Order awarding plaintiff $406,473.13 in attorney's fees and costs will be entered.

Entered this _8th_ day of July, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge